# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| LIGHTGUIDE, INC., | Case No. 2:22-CV-00433-RWS-RSP |
|       Plaintiff, | JURY TRIAL DEMANDED |
| vs. | **ORAL ARGUMENT REQUESTED** |
| AMAZON.COM, INC., AMAZON.COM SERVICES LLC, | |
|       Defendants. | |

## <u>DEFENDANTS AMAZON.COM, INC.'S AND AMAZON.COM SERVICES LLC'S</u> <u>RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>

TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     APPLICABLE LEGAL PRINCIPLES ............................................................... 1

III.    OVERVIEW OF THE ASSERTED PATENTS AND PROPOSED
        CONSTRUCTIONS ............................................................................................ 2

        A.   The Operational Guide System of the '981 Patent Guides a Human
             Through A Predesignated Sequence of Actions ......................................... 3

        B.   The Claimed "Visual Indicators" or "Indicating Lights" of All Three
             Patents Affirmatively Direct a Person To Do Something .......................... 7

IV.     PROPER CONSTRUCTION OF THE DISPUTED CLAIM TERMS ................ 8

        A.   "An operational guide system adapted to provide visual indicators to
             an individual to guide sequential actions" ['981 Patent, Claim 1
             Preamble] ................................................................................................... 8

        B.   "sequential actions" ['981 Patent, Claims 9, 10, 11, 12, 13, 24, 25] ...... 11

        C.   "operation information" ['981 Patent, Claim 1] ....................................... 12

        D.   "operational information" ['981 Patent, Claims 11, 12] .......................... 15

        E.   "project and target at least one indicating light" ['981 Patent, Claim 1] ............... 15

        F.   "an assembly action" ['981 Patent, Claims 2, 7] ..................................... 16

        G.   "work piece" ['981 Patent, Claims 4, 5] .................................................. 18

        H.   "programmable via at least one program screen" ['981 Patent, Claims
             9, 24] .......................................................................................................... 19

        I.   Preambles to Claims 1 and 17 ['614 Patent, Claims 1 and 17] ............... 22

        J.   "projecting visual indicators to guide actions of an individual for a
             particular guided operation" / "provide visual indicators to an
             individual to guide actions" ['614 Patent, Claims 1 and 17] .................. 23

        K.   "guide system" / "visual indicators for a particular guided operation" /
             "project and target at least one indicating light" ['614 Patent, Claims
             1 and 17] .................................................................................................... 23

        L.   "selectable addressed display features" ['614 Patent, Claims 1 and 17] ............... 23

        M.   "address identifier" ['614 Patent, Claims 1, 17] ...................................... 25

TABLE OF CONTENTS (cont.)

Page

N.   "with a combination of the sequence of input signals resulting in a creation of a dynamic, real time projection of visual indicators" ['614 Patent, Claims 1, 17] ................................................................................. 25

O.   "A guide system adapted to provide visual indicators to an individual to guide actions of the individual for a particular guided operation" ['036 Patent, Cl. 7] ......................................................................................... 27

P.   "a camera located proximate to said directional light device" ['036 Patent, Cl. 7]............................................................................................. 27

Q.   "project and target at least one indicating light" ['036 Patent, Cl. 7] ................... 30

R.   "to project a visual indicator with said indicating light onto a physical object associated with the particular guided operation" ['036 Patent, Claim 7]............................................................................................... 30

V.   CONCLUSION ................................................................................. 30

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdou v. Alphatec Spine*,
   2014 WL 6611422 (S.D. Ca. Nov. 19, 2014)........................................................29

*Acorn Semi v. Samsung*,
   2020 WL 6136847 (E.D. Tex. Oct. 16, 2020)......................................................14

*Alcohol Monitoring Sys. v. ActSoft*,
   2011 WL 5075619 (D. Colo. Oct. 25, 2011)..........................................................6

*Bankr. of Rubber Thread v. Filmax*,
   593 F.3d 1346 (Fed. Cir. 2010)...............................................................................6

*Bd. Of Regents of the Univ. of Texas Sys. v. BENQ Am.*,
   533 F.3d 1362 (Fed. Cir. 2008).............................................................................26

*Bell Comms. Rsch. v. Vitalink,
   Comms.*, 55 F.3d 615 (Fed. Cir. 1995)..........................................10, 11, 22, 27

*Bio-Rad Lab'ys v. 10 Genomics*,
   967 F.3d 1353 (Fed. Cir. 2020).............................................................................11

*Catalina Mktg. Int'l v. Coolsavings.com*,
   289 F.3d 801 (Fed. Cir. 2002)................................................................10, 22, 23

*Decisioning.com v. Federated Dep't Stores*,
   527 F.3d 1300 (Fed. Cir. 2008)...............................................................................2

*Deere & Co. v. Bush Hog*,
   703 F.3d 1349 (Fed. Cir. 2012).............................................................................10

*Eli Lilly & Co. v. Teva Pharms. Int'l*,
   8 F.4th 1331 (Fed. Cir. 2021)................................................................................11

*Ethicon End-Surgery, Inc. v. U.S. Surgical Corp.*,
   93 F.3d 1572 (Fed. Cir. 1996)...............................................................................20

*Ethicon LLC v. Intuitive Surgical*,
   2021 WL 960766 (Fed. Cir. Mar. 15, 2021) ........................................................17

*Fornesa v. Fifth Third Mortgage*,
   897 F.3d 624 (5th Cir. 2018)....................................................................................6

*Geoscope Techs. v. Google*,
   2023 WL 4627433 (E.D. Va. July 19, 2023) ........................................................29

TABLE OF AUTHORITIES (cont.)

Page(s)

*Goldenburg v. Cytogen*,
　373 F.3d 1158 (Fed. Cir. 2004) ............................................................................6

*Groove Digital v. United Bank*,
　825 F. App'x. 852 (Fed. Cir. 2020) ...................................................................1, 9

*Haliburton Energy Srvs. v. M-I*,
　514 F.3d 1244 (Fed. Cir. 2008) ..........................................................................27

*Helmsderfer v. Bobrick Washroom Equip.*,
　527 F.3d 1379 (Fed. Cir. 2008) ..........................................................................28

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
　755 F.3d 1367 (Fed. Cir. 2014) ............................................................................6

*Homeland Housewares v. Whirlpool*,
　865 F.3d 1372 (Fed. Cir. 2017) ............................................................................1

*In re Cruciferous Sprout Litig.*,
　301 F.3d 1343 (Fed. Cir. 2002) .....................................................................10, 22

*In re Giannelli*,
　739 F.3d 1375 (Fed. Cir. 2014) ..........................................................................11

*in re Neurografix ('360) Pat. Litig.*,
　201 F. Supp. 3d 206 (D. Mass. 2016) .................................................................29

*Innova/Pure Water v. Safari Water Filtration Systems*,
　381 F.3d 1111 (Fed. Cir. 2004) ..........................................................................19

*Interval Licensing LLC v. AOL, Inc.*,
　766 F.3d 1364 (Fed. Cir. 2014) .............................................................12, 27, 29

*Intervet Inc. v. Merial Ltd.*,
　617 F.3d 1282 (Fed. Cir. 2010) ..........................................................................12

*Irdeto Access v. Echostar*,
　383 F.3d 1295 (Fed. Cir. 2004) ...................................................................1, 2, 24

*Ironburg Inventions v. Valve*,
　64 F.4th 1274 (Fed. Cir. 2023) ...........................................................................29

*Liberty Ammunition v. U.S.*,
　835 F.3d 1388 (Fed. Cir. 2016) ..........................................................................28

*Luminara Worldwide v. Liown Elecs.*,
　814 F.3d 1343 (Fed. Cir. 2016) .......................................................................3, 4

TABLE OF AUTHORITIES (cont.)

Page(s)

*Markman v. Westview*,
    52 F.3d 967 (Fed. Cir. 1995) ..........................................................................................1, 12

*Masimo v. Sotera Wireless*,
    2023 WL 6990542 (Fed. Cir. Oct. 24, 2023) ......................................................................1

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) ....................................................................................................12, 13

*NuVasive v. Alphatec Holdings*,
    557 F. Supp. 3d 1069 (S.D. Cal. 2021) .............................................................................29

*O2 Micro v. Beyond Innovation*,
    521 F.3d 1351 (Fed. Cir. 2008) ........................................................................................25

*Pfizer v. Ranbaxy Labs.*,
    457 F.3d 1284 (Fed. Cir. 2006) ..........................................................................................6

*Phillips v. AWH*,
    415 F.3d 1303 (Fed. Cir. 2005) ..............................................................................1, 12, 17

*Poly-Am. v. GSE Lining*,
    *Tech.*, 383 F.3d 1303 (Fed. Cir. 2004) .............................................................................10

*Quanergy Sys. v. Velodyne Lidar USA*,
    24 F.4th 1406 (Fed. Cir. 2022) ...........................................................................................8

*Regents of the University of Minn. v. AT&T Mobility*,
    2022 WL 3142322 (D. Minn. Aug. 5, 2022) ......................................................................6

*TomTom, Inc. v. Adolph*,
    790 F.3d 1315 (Fed. Cir. 2015) ........................................................................................11

*TransData v. Centerpoint Energy Houston Elec.*,
    2016 WL 3172791 (E.D. Tex. 2016) ...........................................................................28, 29

*Uniloq 2017 v. Paychex*,
    2020 WL 2329474 (D. Mass. May 11, 2020) .....................................................................6

**Other Authorities**

U.S. Patent Application Publication No. 20050225753 ("Engelbart") ............................................ ii

U.S. Patent Application Publication No. 2008/0121168 ................................................................. i

U.S. Patent Application Publication No. 2011/0178627 ................................................................. i

TABLE OF AUTHORITIES (cont.)

<u>Page(s)</u>

U.S. Patent No. 10,528,036 ........................................................................................................ i, ii, 2

U.S. Patent No. 7,515,981 ......................................................................................................... i, 2, 3, 4

U.S. Patent No. 9,658,614 ............................................................................................................ i, 2

## TABLE OF ABBREVIATIONS

| Phrase | Abbreviation |
|---|---|
| Amazon.com, Inc. and Amazon.com Services LLC, together | "Amazon" |
| LightGuide, Inc. | "LightGuide" |
| Person of Ordinary Skill in the Art | "POSITA" |
| U.S. Patent No. 7,515,981 | "'981 Patent" or "'981 Pat." |
| U.S. Patent No. 9,658,614 | "'614 Patent" or "'614 Pat." |
| U.S. Patent No. 10,528,036 | "'036 Patent" or "'036 Pat." |
| '981 Patent, '614 Patent, and '036 Patent, together | "Asserted Patents" |
| Claim | "Cl." |
| Declaration of Christina Von der Ahe Rayburn in Support of Amazon's Responsive Claim Construction Brief | "Rayburn Decl." |
| Declaration of William Singhose re Indefiniteness of "Proximate" Term | "Singhose Decl." |
| U.S. Patent Application Publication No. 2011/0178627 | "Wechter" |

## **TABLE OF EXHIBITS TO RAYBURN DECLARATION**

| Exhibit | Description |
|---------|-------------|
| A | U.S. Patent No. 7,515,981 ("'981 Patent") |
| B | U.S. Patent No. 9,658,614 ("'614 Patent") |
| C | U.S. Patent No. 10,528,036 ("'036 Patent") |
| D | Excerpts of '614 Patent Prosecution History |
| E | U.S. Patent Application Publication No. 2008/0121168 |
| F | Comparison of '981 Patent Specification with '614 Patent Specification |
| G | 2004 Concise Oxford English Dictionary, definitions for "assembly," "guide," "sequence," "sequential," and "target" |
| H | 2001 Microsoft Encarta College Dictionary, definitions for "assembly," "guide," "proximate," and "target" |
| I | 1985 American Heritage Dictionary, definitions for "indicate" and "indicator" |
| J | 1993 New Shorter Oxford English Dictionary, definitions for "indicate" and "indicator" |
| K | 2002 Oxford American College Dictionary, definitions for "assembly," "guide," "indicate," "sequential," and "target" |
| L | 2004 Longman Dictionary of American English, definition for "sequence" |
| M | 2003 Merriam Webster's Collegiate Dictionary, definition for "assembly" |
| N | U.S. Patent Application Publication No. 2011/0178627 ("Wechter") |
| O | 2010 New Oxford American Dictionary, definition for "proximate" |
| P | 2011 American Heritage Dictionary of the English Language, definition for "proximate" |

## TABLE OF EXHIBITS TO SINGHOSE DECLARATION

| Exhibit | Description |
|---|---|
| 1 | U.S. Patent No. 10,528,036 ("'036 Patent") |
| 2 | 2010 New Oxford American Dictionary, definition for "proximate" |
| 3 | 2011 American Heritage Dictionary of the English Language, definition for "proximate" |
| 4 | 2001 Microsoft Encarta College Dictionary, definition for "proximate" |
| 5 | U.S. Patent Application Publication No. 20050225753 ("Engelbart") |
| 6 | '036 Patent Prosecution History |
| 7 | Professor William Singhose, PhD Curriculum Vitae 2023 |
| 8 | Professor William Singhose, Expert Testifying Experience |

## I.    <u>INTRODUCTION</u>

LightGuide seeks to expand the scope of its patents by reading the claims in a vacuum, divorced from what the specification teaches. Amazon's proposed constructions reflect the plain meaning (or lack thereof), as that would have been understood by a POSITA in light of the intrinsic and extrinsic evidence. Amazon requests that the Court adopt its proposed constructions.

## II.    <u>APPLICABLE LEGAL PRINCIPLES</u>

A claim term should be given the "ordinary and customary meaning" that it would be given by a POSITA at the time of the invention. *Phillips v. AWH*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). "[T]he 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321, *see also Markman v. Westview*, 52 F.3d 967, 979 (Fed. Cir. 1995).

When a term is expressly defined by a patentee, that meaning generally controls. *Groove Digital v. United Bank*, 825 F. App'x. 852, 855 (Fed. Cir. 2020). But an explicit definition is not required. *Id.* at 856. Rather, a "specification 'may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents.'" *Id.* (citations omitted). "[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'" *Homeland Housewares v. Whirlpool*, 865 F.3d 1372, 1377 (Fed. Cir. 2017); *see also Irdeto Access v. Echostar*, 383 F.3d 1295, 1303 (Fed. Cir. 2004) (construing "group" in a limited way, even though "the specification [did] not contain any statements of explicit disavowal or words of manifest exclusion," because "[a] reasonable competitor reading the patent could only understand 'group' to refer to a subset of all subscribers."); *Masimo v. Sotera Wireless*, 2023 WL 6990542, at *4 (Fed. Cir. Oct. 24, 2023) (limiting claim term where the specification was "uniform in its description" of that term).

"Moreover, if a disputed term has 'no previous meaning to [a POSITA,] its meaning, then, must be found [elsewhere] in the patent.'" *Irdeto*, 383 F.3d at 1300 (citation omitted). Absent an

"accepted meaning," a claim term should be construed "only as broadly as provided for by the patent itself." *Id.* (citation omitted). "Whether an invention is fairly claimed more broadly than the 'preferred embodiment' … is a question specific to the content of the specification, the context in which the embodiment is described, the prosecution history, and if appropriate the prior art …." *Decisioning.com v. Federated Dep't Stores*, 527 F.3d 1300, 1311 (Fed. Cir. 2008).

*Decisioning* is particularly relevant here. In that case, the claims were directed to a "remote interface," and the patentee argued that they covered personal computers. *Id.* at 1304. The Federal Circuit rejected that argument, *despite* the broad plain meaning of "remote interface," reasoning:

> Divorced from the specification, [remote interface] could encompass almost any user interface that is located remotely …. Read in light of the specification, however, we conclude that [a POSITA] would not understand the term "remote interface" in the '007 patent to encompass a consumer-owned personal computer.

*Id.* at 1308. The Federal Circuit acknowledged that "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Id*. at 1307-08 (citations omitted). Ultimately, however the "focus remains on understanding how a [POSITA] would understand the claim terms." *Id*. at 1308 (quotations omitted).

## III.   OVERVIEW OF THE ASSERTED PATENTS AND PROPOSED CONSTRUCTIONS

There are three LightGuide patents at issue, all directed to systems and methods for "Light Guided Assembly." The '981 Patent, filed in 2006, is formally unrelated to the other two. But the '614 Patent, filed in 2012, reproduces large sections of the '981 Patent, *see* Ex. F, and is the parent patent of the '036 Patent, which was filed in 2017. As such, the '614 and '036 Patents share a specification, which overlaps substantially with the specification of the '981 Patent. Amazon's technology tutorial provides a further overview of the Asserted Patents.

The majority of Amazon's constructions relate to two main concepts fundamental to how a POSITA would understand the intrinsic evidence, and thus the claims: (1) the operational guide

system of the '981 Patent guides an individual through a predesignated sequence of actions; and (2) the "visual indicators" or "indicating lights" of the claims of all three patents affirmatively tell a person what *to do*, not what not to do. This is how a POSITA would understand the claimed inventions, and it is thus how the claims must be construed.

### A.    The Operational Guide System of the '981 Patent Guides a Human Through A Predesignated Sequence of Actions.

The '981 Patent concerns improving human "performance of ***pre-designated operational steps*** to properly complete a particular task." '981 Pat. at 1:20-23.[1] It describes using projected light to guide humans through set multi-step tasks, such as parts assembly, food production, air flight checklists, and choreography. *Id.* at 1:16-67. It states: "[t]he operational guide system ***of the present invention*** thus provides a cost effective and accurate method of ***guiding an individual through a series of tasks*** and provides confirmation that the tasks have been ***fully completed in the proper order***." *Id.* at 3:22-26; *see also id.* at 18:16-19, 5:4-8, 1:63-68 ("[A] … method of providing guidance to individuals performing tasks is desired whereby the occurrence of missed or improperly performed steps is reduced."). This language is conclusive: "the present invention" is about guiding an individual through a *series of tasks* that have a *preset order*. *Luminara Worldwide v. Liown Elecs.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016) ("When a patentee describes the features of the 'present invention' as a whole, he implicitly alerts the reader that this description limits the scope of the invention.").

The broader specification confirms this. The primary embodiment is directed to "a manufacturing environment [where] the selection and assembly of components to a work piece must be properly completed to satisfy the specified design criteria of the work piece." '981 Pat. at 1:23-26. An operator is guided, step-by-step, through the "selection and/or assembly of parts to work piece 14," with "indicating lights" being pointed first to a location from which a component should be selected, and then to a place on the work piece where that component should be attached. *Id.* at 4:19-

---

[1] All emphasis added, unless otherwise noted.

65; *see also* Fig. 1. This cycle is performed until "all required pick and assembly steps have been properly completed." *Id.*; *see also id.* at 9:26-33, 12:41-55, 4:59-65, 10:4-10. While the projected lights are guiding the operator through this process, the guide system of the '981 Patent also displays to the operator, on a screen, "a listing of steps needing completion." *Id.* at 4:33-35, 14:56-15:7, 11:20-29. That "display screen," providing "a list of the various operational steps that are to be performed at, for example, a particular assembly station," is depicted in Figs. 4-5. *Id.* at 14:53-15:55, Figs. 4-5.

The patent describes how the "listing of steps" shown on the "display screen" is pre-programmed: via a "program screen" that allows the guide system "to be sequentially programmed with progressive operational steps." *Id.* at 13:22-14:52. An operator can use that screen to "enter[] descriptive text regarding an operational step," "select[] ... characteristics for the VDF [visual display feature] to be exhibited by an indicating light," and "program[] the location at which an indicating light VDF will be directed." *Id.*; *see also id.* at 7:3-8 (re "pre-targeting" the "indicating light"). The operator can also pre-program "various sequential sub-steps or layers, such as, for example, selecting a bolt, inserting the bolt," etc., that make up a broader operational step. *Id.* at 13:47-59.

From the above, there can be no question that the primary embodiment of the '981 Patent is about directing an individual through a predesignated series of actions. And every alternative embodiment is consistent. As the patent states, the invention is for "tasks that are desired to be performed without omitting any steps," such as food preparation and safety routines. *Id.* at 1:55-63. As to food preparation, the patent states specifically that "the indicating lights may be projected onto sequentially required ingredients and may be timed depending upon when a particular ingredient is to be added." *Id.* at 17:38-43. Never does the patent disclose allowing the steps performed by the operator to be changed on the fly.[2] Rather, the "flexibility" that the patent touts is its ability to switch

---

[2] LightGuide argues that the '981 Patent discloses embodiments in which "neither the actions nor the guidance provided is 'pre-designated'." Dkt. 134 at 10. Whether "the guidance provided" is pre-designated is irrelevant; Amazon's point is that *the steps the human should follow* are "pre-
(Continued...)

from one set of pre-designated steps to another, such as by switching between products-to-be-assembled. *Id.* at 18:22-30, 4:66-5:16. While LightGuide argues that this "flexibility" shows that steps are not predesignated, Dkt. 134 at 4-5, it in fact shows that the *maximum* flexibility envisioned was the ability to switch between different sets of pre-programmed steps. This further confirms what the specification says: the invention of the '981 Patent is about the performance of predesignated steps.

Indeed, this is precisely what LightGuide argued to the Patent Office to obtain issuance of the later '614 Patent. Specifically, the examiner initially rejected the pending claims of the '614 Patent application in view of U.S. Pub. No. 2008/0121168, which later issued as the '981 Patent. *See* Ex. D at 4; *compare* Ex. A *with* Ex. E. To gain issuance of the '614 Patent, LightGuide distinguished the '981 Patent by arguing that it was limited to "***pre-determined sequences*** of visual indicators," precisely as Amazon is arguing now. The relevant prosecution history of the '614 Patent is as follows:

| |
|---|
| **10/26/2015** – Examiner rejects all pending claims as anticipated by the '981 Patent. Ex. D at 3-4. |
| **3/28/2016** – Patentee argues that the '981 Patent is distinguishable because it describes "discrete programs for each item to be worked on." *Id.* at 45; *see also id.* at 46-47 ("[In the '981 Patent], a separate program for each part and sequence of operations to be performed is created, with the programming including the teaching of each specific display feature to be displayed in sequence and where the feature is to be projected. That is, a separate program for each individual 'item' … is created, with a particular sequence of visual indicators being established by the program."). |
| **5/18/2016** – Patentee emphasizes same points during examiner interview, arguing the '614 Patent is patentable because the '981 Patent is "directed to ***pre-determined sequences of visual indicators***," in contrast to the '614 Patent's "dynamic sequences of visual indicators." *Id.* at 123. |
| **6/28/2016** – Patentee again argues in an examiner interview that the '981 Patent is "directed to ***pre-determined sequences of visual indicators***," in contrast to the '614 Patent's "dynamic sequences of visual indicators," proposing claim amendments consistent with that argument. *Id.* at 130-136. |
| **7/28/2016** – Patentee submits claim amendments discussed during 6/28/2016 interview. *Id.* at 142. |
| **9/28/2016** – Examiner accepts patentee's argument that the '981 Patent does not "explicitly describe any sequence of input signals for dynamic control," cites different prior art for that limitation, and once again rejects all pending claims. *Id.* at 167. |

designated." LightGuide's arguments in fact support that point. For example, LightGuide points to 9:21-48 as showing "the system provid[ing] different commands in response to contingent actions." Dkt. 134 at 10. What is shown there is how the system responds if the human does not follow the pre-designated steps, to get the human *to* follow the pre-designated steps. LightGuide also points to embodiments directed to parts-gathering and custom assembly of goods as proof that actions need not be pre-designated. Dkt. 134 at 10. Not so. The patent specifically describes the lists of parts to be gathered as pre-compiled, and shows that an "order request" pre-designating the custom-assembled goods is what initiates assembly of those goods. *See* '981 Pat. at 10:58-11:4, 17:19-38.

| |
|---|
| **11/14/2016** – During interview, patentee proposes additional claim limitation regarding "the sequence of input signals resulting in the creation of a dynamic, real time projection of visual indicators" and argues that '981 Patent does not disclose this. The examiner agrees. *Id.* at 225-27. |
| **1/17/2017** – Examiner issues notice of allowance based on the foregoing. *Id.* at 258-66. |

Given LightGuide's repeated arguments to the examiner that the '981 Patent is "directed to pre-determined sequences of visual indicators," it should be held to that disclaimer now.[3]

For the same reason, LightGuide should be judicially estopped from arguing that the '981 Patent's claims extend beyond a predesignated sequence of actions. Judicial estoppel has three elements: (1) the party has asserted a position plainly inconsistent with a prior position, (2) a court accepted the prior position, and (3) the party did not act inadvertently. *Fornesa v. Fifth Third Mortgage*, 897 F.3d 624, 628 (5th Cir. 2018). As shown above, each factor is satisfied here.[4] *See Alcohol Monitoring Sys. v. ActSoft*, 2011 WL 5075619, at *4-*6 (D. Colo. Oct. 25, 2011) (applying judicial estoppel in similar circumstances), *aff'd*, 499 F.App'x 974 (Fed. Cir. 2013).[5]

_____

[3] Under Federal Circuit law, the '614 and '981 Patents are sufficiently "related" for LightGuide's statements while prosecuting one to be intrinsic evidence for the other—particularly where, as here, the statements directly addressed the '981 Patent. *See Goldenburg v. Cytogen*, 373 F.3d 1158, 1163, 1168 (Fed. Cir. 2004) (prosecution history statements regarding scope of concurrently filed application properly treated as intrinsic evidence). Here, the '614 Patent incorporates the entire '981 Patent by reference. '614 Pat. at 5:43-47. Even ignoring this, roughly 43% of the '614 Patent's specification is disclosed identically in the '981 Patent. *See* Ex. F. The patents also list identical inventors, were assigned to the same entity, are commonly owned, and relate to the same general subject matter. *Compare* Exs. A-B. Given these similarities, the patentee's statements in prosecuting the '614 Patent constitute intrinsic evidence and an express disclaimer of claim scope. Indeed, courts routinely treat statements from other applications' file histories as intrinsic evidence in such circumstances. *See Uniloc 2017 v. Paychex*, 2020 WL 2329474, at *6 (D. Mass. May 11, 2020) (two commonly owned applications with largely overlapping inventors, a common owner, and disclosures incorporated-by-reference "share a kinship, such that their drafters intended, such that their prosecution histories collectively constitute the intrinsic record for purposes of claim construction"); *Regents of the University of Minn. v. AT&T Mobility*, 2022 WL 3142322, at *8 (D. Minn. Aug. 5, 2022) (applying disclaimer during prosecution of one patent to a second patent and rejecting idea that patents must be continuations, continuations-in-part, or divisionals in order to be "related" for disclaimer purposes).
[4] Judicial estoppel applies with equal force when one tribunal is an administrative agency. *Trustees in Bankr. of Rubber Thread v. Filmax*, 593 F.3d 1346, 1354 (Fed. Cir. 2010).
[5] While LightGuide may attempt to rely on *Hill-Rom v. Stryker*, that case was directed to "statements made during prosecution of a later, **unrelated** patent." 755 F.3d 1367, 1381 (Fed. Cir. 2014). As explained above, the '981 and '614 Patents are sufficiently related for judicial estoppel to apply. *See Pfizer v. Ranbaxy Labs.*, 457 F.3d 1284, 1290 (Fed. Cir. 2006) (citing *Goldenberg*, 373 F.3d at 1167-
(Continued...)

**B.**      **The Claimed "Visual Indicators" or "Indicating Lights" of All Three Patents Affirmatively Direct a Person *To Do* Something.**

Every asserted claim requires the claimed "guide system" to project "visual indicators" or "indicating lights." The plain language and specifications make clear that those "visual indicators"/"indicating lights" tell a person what *to* do, rather than what *not* to do, and that is how a POSITA would understand them. As confirmed by relevant dictionaries, this is the plain meaning of the words "guide," "indicate," and "indicator." *See* Exs. G-K. In addition, the "visual indicators" and "indicating lights" described in the patents are consistently affirmative in this way. For example, in the primary embodiment, described above, the lights point to a location from which a part should be selected, and then to the place where the part should go. *See, e.g.*, '981 Pat. at 4:37-65, 6:63-7:24, 8:8-18, 8:29-35, 8:54-63, 12:41-55, 16:36-40; '614/'036 Pats. at 6:12-40, 8:6-34, 9:13-22. The lights can also point to a tool or tool holder when a tool is needed, or "onto sequentially required ingredients." '981 Pat. at 11:66-12:5, 17:38-43; '614/'036 Pats. at 11:59-65, 14:8-12. The patents discuss ensuring the "indicating lights accurately impinge ***on the desired operational step locations***," meaning they show *where* the operator should act. '981 Pat. at 6:10-16, 8:29-35; '614/'036 Pats. at 7:34-44. They explain that the "indicating lights" can be, for example, "sequential numbers … projected where each number indicates a step in the assembly action being preformed [sic] by the operator, or part numbers or textual information … to provide written guidance to the operator." '981 Pat. at 8:29-53; '614/'036 Pats. at 8:54-9:12. The sample indicators shown in Figs. 1A-1L of all three patents—including the words "Select," "Insert", "Pick," and "Assemble"—are all affirmative. Even where the "indicating lights" are described as displaying "videos or pictures or animation," it is clear that those are offering *affirmative* guidance, such as "a training video." '981 Pat. at 8:24-28, 8:49-53; '614/'036 Pats. at 8:49-53, 9:5-8. Notably, the patents describe the operation of the guide system of the invention as "directing" actions. *See, e.g.*, '981 Pat. at 12:44-51 (discussing using an "indicating

---

68 for the proposition that only "***[a]bsent a formal relationship or incorporation*** during prosecution of the patent at issue" are statements in another patent's history irrelevant to claim construction).

light" to "direct operator 12 as to the proper assembly point"); '614/'036 Pats. at 12:25-32 (same), 17:6-9 (projecting VDFs to "direct inspection, alignment, masking or other such operations").

LightGuide argues that the patent discloses lights that "indicate *not* to take action," but includes no citation to any such lights. Dkt. 134 at 4, 19 at omission is unsurprising, for there are none described in the patents. None of the embodiments cited by LightGuide affirmatively warns a person *not* to perform a particular assembly step, or *not* to pick a part from a particular parts bin. For context, consider parts bin 34 of Figure 1, which has four component-storing boxes. *See, e.g.*, '981 Pat. at Fig. 1. There is no disclosure of an "indicating light" or "visual indicator" that shines on one such box to say: "do not get a component from here, grab from anywhere else." Nor is there a disclosure of anything approaching that functionality.[6] As such, a POSITA would not understand the claimed inventions to cover indications or indicators telling a person what *not* to do, and Amazon's constructions should be adopted. *See Quanergy Sys. v. Velodyne Lidar USA*, 24 F.4th 1406, 1416 (Fed. Cir. 2022) (affirming narrow construction of term where written description "introduce[d] the concept of" the narrower construction "right from the start" and "focus[ed] exclusively" on it).

## IV.    PROPER CONSTRUCTION OF THE DISPUTED CLAIM TERMS

### A.    "An operational guide system adapted to provide visual indicators to an individual to guide sequential actions" ['981 Patent, Claim 1 Preamble]

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Limiting as to "operational guide system" | Limiting in its entirety |
| Plain and ordinary meaning | "An operational guide system adapted to provide visual indicators to an individual to direct them to perform a predesignated sequence of actions" |

Amazon incorporates herein Sections III.A and III.B above. With the context provided by the specification and other evidence, set forth above, Amazon's construction accurately reflects how a POSITA would understand this term. This is especially so because the term "sequential" is

---

[6] While the patents discuss displaying or projecting an "error" message, that is not the same as a light affirmatively telling a person *not* to take a particular step. *See* '981 Pat. at 9:5-10, 9:40-48; '614 Pat. at 9:27-32. And the "error" messages are not described as "indicating lights" or "visual indicators."

consistently used in the patent to refer to a pre-designated sequence of actions.[7] For example, the patent discusses that the display device "display[s] sequential operational steps, such as steps completed, the current step needing to be performed, and subsequent yet to be performed steps." '981 Pat. at 11:46-56, Fig. 4. Because the "sequential operational steps" include both completed and "subsequent yet to be performed steps," it is clear that they are a series of steps that has been pre-programmed. As another example, the patent describes pre-programming the "various sequential sub-steps or layers" that would together make up a broader operational step like "Mount manifold." *Id.* at 13:34-59. Similarly, every claim that refers to "sequential actions" refers to them as including set steps to be performed in the future. *See, e.g.*, *id.* at Cls. 9/24 (re pre-programming in and then displaying "indicia regarding sequential actions ***to be performed***"). The '981 Patent thus defines both "the present invention" and "sequential" in a way that is consistent with Amazon's constructions, and those should be adopted. *See Groove Digital*, 825 Fed. App'x at 856.

Additionally, that the '981 Patent only discloses predesignated sequences of actions, as explained above in Section III.A, confirms that the visual indicators must be affirmative, rather than negative suggestions of what *not* to do. There is simply no disclosure in the '981 Patent of an individual being able to choose to perform one of a number of not-specifically-directed actions, or how the system would respond.  Indeed, the term "visual indicators" is *only* used specifically in relation to the primary embodiment for part selection and part assembly.  *See* '981 Pat. at 6:60, 8:16.

Finally, Amazon's proposal correctly uses plural terms—"visual indicators" and "actions"—in its construction for *those plural terms*.  LightGuide's argument that Amazon has wrongly inserted the plural into its construction, *see* Dkt. 134 at 3-4, ignores the very language being construed.

 LightGuide argues that only the phrase "operational guide system" of the preamble is limiting. Even if this were correct, Amazon's construction should *still* be adopted, applied to that term, because

---

[7] This is consistent with relevant dictionaries, which define "sequence" and "sequential" as relating to "particular" or "logical" orders. *See, e.g.*, Exs. G, K-L.

it accurately describes the operational guide system of "the present invention." *See, e.g.*, '981 Pat. 2:3-6 ("***The present invention*** provides an operational guide system or assembly guide system adapted to provide visual indicators to an individual to guide sequential actions at a work location."), 1:16-29 ("***The present invention*** is directed to a system for guiding an individual in the performance of operational steps, and in particular a system that provides visual indicators to the individual."), 3:24-26 ("***The operational guide system of the present invention*** thus provides a cost effective and accurate method of guiding an individual through a series of tasks and provides confirmation that the tasks have been fully completed in the proper order."), 18:16-22 (similar). But LightGuide is not correct. The entirety of the preamble is limiting, because it breathes life and meaning into the claims.

A preamble is limiting if it "recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l v. Coolsavings.com*, 289 F.3d 801, 808 (Fed. Cir. 2002) (citation omitted). A preamble may also be limiting if it provides antecedent basis, or where it is "essential to understand limitations or terms in the claim body." *Id.* at 808; *Bell Comms. Rsch. v. Vitalink Comms.*, 55 F.3d 615, 620 (Fed. Cir. 1995) ("[W]hen the claim drafter chooses to use *both* the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects."). Whether to treat a preamble as a limitation is a determination "resolved only on review of the entire[] ... patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Catalina*, 289 F.3d at 808 (citation omitted). Where the specification refers to a preamble term as part of "the present invention," as is the case here, that term is likely limiting. *See Deere & Co. v. Bush Hog*, 703 F.3d 1349, 1358 (Fed. Cir. 2012) (finding preamble phrase "rotary cutter deck" limiting where specification listed that as aspect of "the present invention"); *Poly-Am. v. GSE Lining Tech.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004) (preamble was limiting where it recited "fundamental characteristic of the claimed invention"); *see also In re Cruciferous Sprout Litig.*, 301 F.3d 1343,

- 10 -

1347 (Fed. Cir. 2002) (relying on phrase "this invention relates to" in finding preamble limiting).

LightGuide admits, as it must, that the "operational guide system" portion of the preamble is limiting because that phrase is used as antecedent basis for Claims 9 and 24. But "sequential actions" is similarly used both in the preamble and in the body of the claims that depend upon Claim 1. *See, e.g.*, '981 Pat. at Cls. 11-13, 24-25. LightGuide thus indicated that it was using "*both* the preamble and the body to define the subject matter of the claimed invention," and the preamble is thus limiting as a whole. *Bell Comms.*, 55 F.3d at 620 (Fed. Cir. 1995). The preamble should not be split into limiting and non-limiting pieces the way LightGuide proposes. *See, e.g.*, *Eli Lilly & Co. v. Teva Pharms. Int'l*, 8 F.4th 1331, 1343 (Fed. Cir. 2021) (declining to reverse finding that entire preamble was limiting where "[i]n addition to giving life and meaning to … each claim, the preambles also provide antecedent basis for at least one later claim term in the independent claims."); *Blue Calypso v. Groupon*, 93 F. Supp. 3f 575, 594 (E.D. Tex. 2015) (declining to split preamble "into limiting and non-limiting portions" because "the language relied upon for antecedent basis is intertwined with the entireties of the preambles such that [they] cannot be parsed").[8] The complete description of the "operational guide system" provided in the preamble of Claim 1 is what breathes life and meaning into the claim and its dependent claims, and it is thus limiting in its entirety.

## B.   "sequential actions" ['981 Patent, Claims 9, 10, 11, 12, 13, 24, 25]

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | "actions of a predesignated sequence" |

For the reasons set forth above in Sections III.A and IV.A, "sequential actions" should be

---

[8] LightGuide argues that the latter half of the preamble is non-limiting because describes only an "intended use." Dkt. 134 at 6.  Not so. *See In re Giannelli*, 739 F.3d 1375, 1379 (Fed. Cir. 2014) (claim term using "adapted to" is more than mere statement of intended use). *TomTom, Inc. v. Adolph*, 790 F.3d 1315 (Fed. Cir. 2015), on which LightGuide relies, is distinguishable. There, the Court held that the following language of a preamble was not limiting: "a method for generating and updating data for use in." The Court explained that that language "stat[ed] a purpose or intended use and employ[ed] the standard pattern of such language: the words 'a method for a purpose or intended use comprising,' …." *Id.* at 1324. This reasoning does not support LightGuide's argument that the full description of the "operational guide system" in the preamble here should be split into limiting and non-limiting parts. *See Bio-Rad Lab'ys v. 10 Genomics*, 967 F.3d 1353, 1371 (Fed. Cir. 2020) (declining to splice preamble where it could "not be neatly packaged into two separate portions").

construed as "actions of a predesignated sequence." The plain language of the claims confirms this. Claims 9 and 24, for example, are directed to pre-programming "indicia regarding sequential actions" and to a display screen to "display indicia regarding sequential actions *to be performed*." With this context, the claimed "sequential actions" are necessarily actions of a predesignated sequence.

LightGuide does not explain what it believes the plain meaning of this claim term to be, or offer any basis to reject Amazon's proposed construction. Instead, LightGuide argues that Amazon's construction would improperly "require a sequence of different steps." Dkt. 134 at 12. This is incorrect. If a predesignated sequence guided a human to perform the same action multiple times (such as for a dance routine), then it would fall within Amazon's construction.

### C.  "operation information" ['981 Patent, Claim 1]

| LightGuide's Construction | Amazon's Construction |
| --- | --- |
| Plain and ordinary meaning | *Indefinite* or "information that signals that a set of predesignated operational steps should be performed" |

"Operation information" is indefinite. To the extent it is not, it must be given some meaning, because the term "operation information" will not be helpful to the jury. *Markman*, 52 F.3d at 976.

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "Operation information" is a made-up term for purposes of the '981 Patent. "[B]ecause [operation information] is a coined term, meaning it has no ordinary and customary meaning, the question is whether the intrinsic evidence provides objective boundaries to the scope of the term." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014). "Idiosyncratic language, highly technical terms, or terms coined by the inventor are best understood by reference to the specification." *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1287 (Fed. Cir. 2010) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-23 (Fed. Cir. 2005) (en banc)).

Here, the '981 Patent provides no definition or boundaries for "operation information." Throughout, the patent refers to "operation information" without further information, or it uses the longer phrase "operation information or characteristic or identification information associated with the work piece 14." '981 Pat. at 4:19-21, 4:37-42, 5:35-37. None of these passages explains what "operation information" *is*. Some passages refer to "operation information or characteristic or identification information associated with the work piece 14, such as, for example, the presence of and/or the type of work piece 14 present at the work station 16." *Id.* at 4:37-42; *see also id.* at 5:35-43, Claims 4/5. However, even these examples do not provide objective boundaries for the term, as they lack a discernable pattern and fail to inform a POSITA how to objectively select *what else* falls within the scope of "operation information." *See Nautilus*, 572 U.S. at 901.

Notably, LightGuide does not argue that the '981 Patent provides objective boundaries for "operation information." Instead, LightGuide argues that "the specification defines 'operation information' in line with its ordinary meaning to mean 'characteristic or identification information' associated with the operation." Dkt. 134 at 8. There are at least four problems with this argument. *First*, the phrase "operation information" has no "ordinary meaning" outside of the '981 Patent. *Second*, LightGuide's definition assumes, without explanation, that in the phrase "operation information *or* characteristic *or* identification information associated with the work piece" (which appears in all three passages cited by LightGuide), the first "or" signals a definition, while the second "or" signals a disjunction between "information" and "characteristic."[9] LightGuide points to nothing in the '981 Patent explaining why that is the case, or how that makes sense. *Third*, LightGuide's proposal omits the concept that the information is "associated with the work piece," which would need to be part of the definition if the first "or" signaled a definition. By omitting this critical phrase, LightGuide highlights that "operation information" is indefinite, because even LightGuide cannot

---

[9] To the extent LightGuide is offering this as a construction, it is wrong for the reasons set forth herein. It is also improper for LightGuide to offer a construction for the first time at this stage.

fully apply its own ostensibly definitional language. *Fourth*, LightGuide's proposal cannot be correct, because a third type of "operation information" is discussed in the patent that is neither characteristic nor identification information. '981 Pat. at 10:58-64 ("Operation information" covers an "order request ... transmitted to a work station from a central processing location ... [listing] what parts to gather and/or assemble."). This third "operation information" makes even more clear that there is no discernible pattern or boundary to the "operation information" in the patent, and the term is indefinite.

LightGuide's argument also ignores one of the most confusing aspects of the '981 Patent—that the claims use the coined terms "operation information" and "operatio*nal* information" to refer to different things, without ever defining the boundary between these terms. *Compare* '981 Pat., Cl. 1 *with* Cls. 11/12. The term "operation information" is indefinite for this reason as well.[10]

Should the court conclude the term is not indefinite, it should be construed as Amazon proposes. The sole commonality in the types of "operation information" in the patent is the fact that they commence the operational guide system's operation, *i.e.*, guiding an individual through a series of predesignated actions. *See, e.g.*, '981 Pat. at 4:19-26 ("Assembly guide system 10 is operable, in response to an operation information or characteristic or identification information associated with work piece 14 detected by sensor apparatus 26, to selectively provide indicating lights 46, 52 to guide an operator in the section and/or assembly of parts to work piece 14 ...."), 4:38-42 (similar), 6:36-7:24 (similar), 10:60-11:4 (order requests direct "what parts to gather and/or assemble"); Section III.A, *supra*.[11] No other construction makes sense, and LightGuide has not offered one.

---

[10] LightGuide argues that Amazon has not shown sufficient evidence of indefiniteness, noting that Amazon did not submit an expert declaration on this point, *See* Dkt. 134 at 13, n.6. Of course, the claim language and specification alone can provide sufficient evidence of indefiniteness. *See, e.g.*, *Acorn Semi v. Samsung*, 2020 WL 6136847, *19-20 (E.D. Tex. Oct. 16, 2020).

[11] LightGuide argues that Amazon's construction excludes characteristic or identification information from being operation information. Dkt. 134 at 13. This is incorrect. This information is operation information to the extent it provides the operational guide system with sufficient information to kick off one of its predesignated series of tasks. For the same reason, LightGuide is incorrect that Amazon's construction would require the operation information to signal "which action should be performed." Dkt. 134 at 9. Amazon's construction would require only that the operation information be sufficient to signal that *a* set of predesignated operational steps should be performed.

### D.    "operational information" ['981 Patent, Claims 11, 12]

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | *Indefinite* |

"Operational information" is indefinite for reasons similar to those described above for "operation information." The term "operational information" appears only three times in the '981 Patent: in Claims 11, 12, and 23. Claims 11 and 23 provide only the following context: "wherein said controller is configured to monitor operational information associated with sequential actions." Claim 12 adds the idea that "operational information" can include "a cycle time, an incorrectly performed action, a time between sequential actions, and an operator identification." Of course, since Claim 12 depends on Claim 11, "operational information" is not limited to those four examples. But there is nothing in the patent that defines "operational information" or provides it with scope.

LightGuide does not offer a construction or make any attempt to explain this term's scope. LightGuide does not even argue that this term has a plain and ordinary meaning; it does not. Instead, LightGuide argues that "these Claims obviously map onto the specification's frequent disclosures regarding preferred embodiments 'to monitor and record various parameters useful for improving productivity.'" Dkt. 134 at 15. It is not clear what LightGuide means by this argument. To the extent LightGuide believed that the specification provides meaning to this claim term, it would have proposed a construction reflecting that meaning. At any rate, the fact that the examples provided in Claim 12 appear to map to examples described in the specification as "parameters useful for improving productivity" does not evidence that "parameters useful for improving productivity" constitutes the full scope of "operational information," and the plain language indicates otherwise. Thus, because a POSITA has no way to understand its scope, this claim term is indefinite.

### E.    "project and target at least one indicating light" ['981 Patent, Claim 1]

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | "project and aim at least one light that directs an individual to take a specific action" |

Amazon correctly construes the terms "target" and "indicating" in accordance with how a POSITA would have understood those terms in the context of the '981 Patent. LightGuide does not appear to disagree with Amazon's proposed construction for "target." *See* Dkt. 134 at 10; *see also* Exs. G-H (defining "target" as "aim"). As to "indicating," the "indicating lights" claimed in the '981 Patent *indicate* to a person what *to* do, as explained above in Section III.B, as opposed to what not to do. *See also* Exs. J-K (defining "indicate" as "suggest as a desirable or necessary course of action").[12]

**F.     "an assembly action" ['981 Patent, Claims 2, 7]**

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | "an action that involves fitting together the components of a machine or other object"<br><br>*Placing items together in a bin is not an assembly action.* |

Claims 2 and 7 are dependent claims, directed to an "assembly action" subset of the operational guide system claimed in Claim 1. Amazon's construction comes directly from dictionary definitions for "assembly," particularly when used as an adjective. *See* Ex. K; *see also* Exs. H, G, M.

Amazon's construction is also consistent with the specification. The '981 Patent specifically distinguishes "assembly operations" from other types of operations that could benefit from the claimed operational guide system, including, in particular, placing items together into a bin:

> Although the operational guide system of the present invention is discussed above in regard to assembly operations and testing operations, it should also be appreciated that numerous alternative uses and/or configurations of the operational guide system of the present invention exist. For example, an operational guide system may be used to pick and package products into a shipping container, such as a bag or box, for fulfilling an order, such as part kitting at order fulfillment centers, supermarkets, part bin loading, or the like.

'981 Pat. at 17:19-27; *see also id.* at 1:55-58 (distinguishing "manufacturing assembly operations" from "packaging products"), 3:27-28 (distinguishing "assembly" from "packaging"). LightGuide argues that testing operations and the other alternatives described above *all* constitute assembly

---

[12] This is particularly so for the '981 Patent, because it does not say how the system would guide a person doing *non*-pre-designated actions. In other words, if the system only told a person *not* to do X, there is no showing of how the system would respond to the person doing Y or Z. *See* § IV.A.

operations. But that is contrary to the specification. Because the '981 Patent clearly differentiates between the primary embodiment, which is an "assembly operation," *see id.* at Fig. 1, and the other embodiments, it defines "assembly action" as something other than those embodiments.[13]

With this distinction clear, the plain language and the specification support Amazon's construction for "assembly action." *See, e.g.*, '981 Pat. at 1:24-25 ("assembly of components to a work piece"), 4:37-65 (lights directing operator to "the operational step location 54 on the work piece 14 where the selected component is to be installed"), 11:23-24 ("a work piece 14 properly affixed with the part that is to be assembled"), 12:48-51 ("operational step location 54*a* on work piece 14 [for] the proper assembly point for the selected part"); Exs. G, H, K, M.[14]

LightGuide's citations are not to the contrary. For example, LightGuide cites to language at 17:31-38 regarding "the assemblage of parts or components" into a shipping container. But that language appears in the very paragraph reproduced above, which categorizes the embodiments therein as *not* assembly actions. LightGuide's citation to 10:60-66 is similar; it describes the same "assemblage of parts" embodiment that Column 17 states is *not* an assembly action. Indeed, the next sentence states that, in addition to a part-gathering action, "the transmission of an order request may *also* generate an assembly operation, such as … custom assembled goods," further indicating that there is a distinction in the patent between "assembly actions" and part-gathering actions. *See id.* at 10:60-11:4. The remainder of LightGuide's citations are to an operator being directed to perform various sub-steps in connection with a broader assembly action that involves fitting together the

---

[13] For this reason, LightGuide's reliance on *Ethicon LLC v. Intuitive Surgical*, 2021 WL 960766 (Fed. Cir. Mar. 15, 2021) is misplaced, for this claim term and for the ones that follow.  Amazon's positions rely on the very "independent lexicography in the written description" for which that case advocates. *Id.* at *907.

[14] LightGuide argues that Amazon ignores a "gathering" definition for assembly. Dkt. 134 at 11 n.8. This argument largely relies on definitions for "assemble," not "assembly," or on definitions focusing on *people* gathering. At any rate, the specification makes clear which "assembly" definition applies, including by categorizing "gathering" embodiments as *not* assembly embodiments. *See Phillips*, 415 F.3d 1303, 1319 ("[B]ecause words often have multiple dictionary meanings, the intrinsic record must be consulted to determine which of the different possible dictionary meanings is most consistent with the use of the term in question by the inventor.").

- 17 -

components of a machine or other object. *See, e.g.*, Fig. 4 (directing "select" and "check" sub-steps of a broader assembly action), 13:47-59 (describing "sub-steps or layers" making up the assembly step "mount manifold"). Such direction would fall within the scope of Claim 2, as construed by Amazon, because the operator is "performing an assembly action" at the work station. These citations thus do not undermine Amazon's construction, and in fact support it.

### G.   "work piece" ['981 Patent, Claims 4, 5]

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | "a machine or other object to which components are assembled to complete an assembly action, or an assemblage of parts or components that will be assembled at a later time" |
|  | *A bin into which items may be collected is not a work piece.* |

LightGuide argues that "work piece" is entitled to "its ordinary meaning consistent with the intrinsic record," but does not say what that meaning is. Dkt. 134 at 12. LightGuide then argues that a *POSITA* would readily understand the term, but does not argue that a *jury* would. Indeed, LightGuide acknowledges that the way the specification defines "work piece" may be inconsistent with the term's plain meaning. Dkt. 134 at 12 n.9. In this context, claim construction is necessary.

Amazon's proposed construction is correct. First, it correctly explains the "work piece" of the preferred embodiment: a machine or other object to which components are assembled to complete an assembly action. *See, e.g.*, '981 Pat. at 1:20-54 ("assembly of components to a work piece"), 4:37-65 (lights directing operator to "the operational step location 54 on the work piece 14 where the selected component is to be installed"), 11:23-24 ("a work piece 14 properly affixed with the part that is to be assembled"), 12:48-51 ("operational step location 54*a* on work piece 14 [for] the proper assembly point for the selected part"). Second, it adequately includes the embodiments that—despite being outside the plain meaning of "work piece" or the primary embodiment—the patent defines as "work pieces." Specifically, the patent brings within the scope of "work piece" the following:

- "a collection of parts assembled into a parts holder," *id*. at 10:64-66.
- "the assemblage of parts or components … even if initially no components are assembled

or collected to define or form a work piece." *Id.* at 17:34-38.

- "a food or drug item to which ingredients, components, or portions are added," *id.* at 10:66-11:1.

The patentee implicitly defined "work piece" with respect to the primary embodiment, and explicitly defined "work piece" in these three additional ways. From these definitions, a POSITA would understand a "work piece" as construed by Amazon. A POSITA would further understand that a bin into which items may be collected is not a "work piece," because the patentee specifically considered that embodiment and defined the "work piece" in that situation as the collection of parts, not the bin. Amazon's proposed construction is thus appropriate.[15]

### H.    "programmable via at least one program screen" ['981 Patent, Claims 9, 24]

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | "programmable via at least one screen that allows an individual to predesignate a sequence of actions" *A program screen is distinct from an operator display screen used during a guided operation.* |

Amazon's proposed construction properly gives meaning to the term "program screen." While LightGuide argues about the meaning of "programmable"—something Amazon did not attempt to construe—LightGuide ignores the term "program screen." Dkt. 134 at 13. But that term must be given meaning, and that meaning is easily discernible from the claims and specification. *See Innova/Pure Water v. Safari Water Filtration Systems*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("[A]ll claim terms are presumed to have meaning in a claim.").

There is a clear distinction in Claims 9 and 24 of the '981 Patent between the two types of "screens" that are displayable on the "display device." First, there is the "display screen," which is displayed "during operation of the operational guide system," and is "adapted to display indicia regarding sequential actions to be performed." Second, there is the "program screen," which allows an individual to program the "sequential actions" that will then be displayed on the display screen

---

[15] To the extent that the Court finds that Amazon's proposal does not adequately account for food or drug items, minor changes to the construction would fix that.

during operation of the guide system." Thus, from the plain language of the claims, the "program screen" and the "display screen" are different screens. *See Ethicon End-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) ("If the terms "pusher assembly" and "pusher bar" described a single element, one would expect the claim to consistently refer to this element as *either* a "pusher bar" or a "pusher assembly," but not both, especially not within the same clause.").

This distinction is confirmed by the specification. For example, Fig. 3 "is an illustration of a program screen generated on a display device used to program operational guide system software in accordance with the present invention." '981 Pat. at 3:59-61. In contrast, Figs. 4 and 5 are "illustration[s] of an operator display screen generated on a display device of the operational guide system in accordance with the present invention." As the patent explains, Figs. 3-5 depict "[t]he operational programming and use of an operational guide system." *Id.* at 13:22-24. Fig. 3 depicts the programming; Figs. 4-5 depict the use.

As can be seen from those figures, the program screen and the display screens are different. In the "program screen," depicted in Fig. 3, an operator is setting up what the display screen will later show to the person being guided. As the patent explains, "[p]rogram screen 100 includes various fields 102, 104, 106, 108 for entering descriptive text regarding an operational step, for selecting a type of display graphic or visual display feature ("VDF") and characteristics for the VDF to be exhibited by an indicating light …, and for programming the location at which an indicating light VDF will be directed via the control module." *Id.* at 13:26-33; *see also id.* at 13:34-46 ("The VDF description field 102 enables the operational guide system to be sequentially programmed with progressive operational steps."), 13:47-14:52 (describing programming of remaining fields).

Figs. 4 and 5 then depict the screens actually being shown during guidance: "Referring now to FIGS. 4 and 5, operator display screens 142 generated on a display device, such as display device 36, are illustrated that may be displayed while operating the operational guide system in a 'run'

- 20 -

mode." *Id.* at 14:53-56. The patent describes in detail the various features of a "display screen," distinct from a "program screen." *See id.* at 14:56-15:3, 15:24-45. The specification thus confirms that a "display screen" and a "program screen" are two separate things, and that the "program screen" allows an individual to predesignate a sequence of actions for an operator to later follow, as explained herein and in preceding Sections III.A and IV.A regarding "sequential actions."

LightGuide argues that the language of Claims 9 and 10 contradicts Amazon's proposed construction. Dkt. 134 at 13. It does not. It makes sense that the "program screen"—which allows an individual to predesignate a sequence of actions—has "at least one input field for entering and/or selecting indicia regarding sequential actions." '981 Pat. at Cl. 9. It further makes sense that the "input field" allows "programming of descriptive text associated with sequential actions," or "programming of an image formed by said at least one indicating light," or "programming of the location at which said at least one directional light device projects said at least one indicating light," because all of these are aspects of the pre-programming of a sequence of actions. *Id.* at Cl. 10; *see also id.* at 13:22-14:52. LightGuide also argues that the operator may "insert, copy, promote, or demote any such steps … refut[ing] the idea that the acts are 'predesignated.'" Dkt. 134 at 14. This argument misses the point. The operator that is performing those tasks *is the one pre-designating the steps* by interacting with the program screen. '981 Pat. at 13:34-46. It is those pre-designated steps that will then be projected and/or shown on the display screen. *Id.* at 14:53-61. Finally, LightGuide argues that the specification describes alternative programming interfaces, screens, fields, etc. Dkt. 134 at 14 (citing '981 Pat. at 15:4-23). This argument supports Amazon, because when LightGuide describes many of those, it describes them as something *other* than the "programming screen" described earlier in the patent. *See* '981 Pat. at 15:4-23 (describing alternate "programming *interfaces*," such as "programming software" or a "programming wizard"). And those that are described as "programming screens" do allow the pre-designation of a sequence of actions. *Id.* (describing "separate programming screens for

each of a description field, graphic selection field, location field, and a feature field"). These embodiments thus do not change the meaning of "programming screen" that is revealed elsewhere.

### I.  Preambles to Claims 1 and 17 ['614 Patent, Claims 1 and 17]

| LightGuide's Construction | Amazon's Construction |
|---|---|
| *The preamble of Claim 1 is not limiting. The preamble of Claim 17 is in part, in so far as it requires a guide system.* | *These preambles are limiting.* |

The preamble of Claim 17 of the '614 Patent reads: "A guide system adapted to provide visual indicators to an individual to guide actions, said guide system comprising." That phase provides antecedent basis for later language in the claim: "cause said guide system to project visual indicators for a particular guided operation." This is a classic example of when the preamble must be found limiting. *See Catalina*, 289 F.3d at 808; *Bell Comms.*, 55 F.3d at 620. LightGuide argues that "guide system" is limiting, while the description of *what that guide system is*—"adapted to provide visual indicators to an individual to guide actions"—is not. This argument is unsupported. *See supra* Section IV.A, n.8. The disputed language provides a description of the "guide system" and the "visual indicators" that are then referenced in the body of the claim, and is thus limiting. This is particularly so because the patent defines "the invention" as "a guide system adapted to provide visual indicators to an individual to guide actions," '614 Pat. at 1:39-40, and emphasizes that "the present invention is directed to improvements in a system for guiding an individual in the performance of operational steps, and in particular a system that provides visual indicators to the individual," *id.* at 1:15-18. *See also id.* at 4:52-58. Because each of the elements of the preamble has been highlighted as critical to the invention, the entirety of the preamble is limiting. *Cruciferous*, 301 F.3d at 1347.

The preamble of Claim 1 of the '614 Patent is equally limiting, for the same reason. It reads: "A method of projecting visual indicators to guide actions of an individual for a particular guided operation." The majority of this language is reiterated in the body of the claim, which recites a "guide system to project visual indicators for a particular guided operation." The only element in the

preamble that is missing from the body is the idea that what is being guided is "actions of an individual." Given that that aspect is highlighted as critical to the invention, it is limiting as well. *See* '614 Pat. at 1:39-40, 1:15-18. Indeed, the words "for a particular guided operation" were added to the preamble during patent prosecution, as part of a series of amendments, and associated examiner interviews, attempting to gain issuance of the '614 Patent. *See* Ex. D at 134; *see also* Section III.A, *supra*. For this reason as well, the preamble of Claim 1 is limiting. *Catalina*, 289 F.3d at 808.

**J.** **"projecting visual indicators to guide actions of an individual for a particular guided operation" / "provide visual indicators to an individual to guide actions" ['614 Patent, Claims 1 and 17]**

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | "projecting visual indicators to an individual to direct them to perform steps of a particular guided operation"/"provide visual indicators to an individual to direct them to perform specific actions" |

Amazon's construction for these terms properly makes clear, consistent with the specification and claim language, that the "guiding" of the invention affirmatively guides a person *to do* something, as discussed above in Section III.B. This fundamental point is only strengthened by the language "for a particular guided operation," which emphasizes the affirmative nature of the guidance.

**K.** **"guide system" / "visual indicators for a particular guided operation" / "project and target at least one indicating light" ['614 Patent, Claims 1 and 17]**

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | "a system that directs an individual to perform <u>one or more</u>[16] specific actions" / "visual indicators that direct an individual to perform <u>one or more</u> specific actions" / "project and aim at least one light that directs an individual to take a specific action" |

Amazon's construction for each of these terms properly makes clear that the "guidance," "visual indicators," and "indicating lights" of the claims, consistent with the plain language and specification, affirmatively instruct an individual *to do* something. *See* Sections III.B, IV.E, IV.J.

**L.** **"selectable addressed display features" ['614 Patent, Claims 1 and 17]**

---

[16] Amazon revised its construction as underlined in response to LightGuide's argument.

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | "drawings, images, text, or videos that are selectable using associated addresses" *Addressed display features do not include positional information.* |

LightGuide's "plain meaning" proposal should be rejected, because this claim term does not have one. Amazon's construction is consistent with the meaning the specification gives to this phrase. In particular, the '614 Patent makes clear that "selectable addressed display features" do not include positional information. It would be thus inappropriate to allow this coined claim term to capture additional scope. *Irdeto*, 383 F.3d at 1303.

The '614 Patent is specific as to the programming of the system underlying Claim 1. "Pre-programmed VDFs," or "visual display features," are stored in one "address table or listing" in the controller. '614 Pat. at 15:24-46, Fig. 3A. Each VDF has a "unique identifier." *Id.* at 15:24-46. "For example, the textual VDF "Select 1" is associated with the address identifier A1." *Id.* "Each unique VDF contains unique characteristic and combination of characteristics including, but not limited to, color, font size, font type, … etc." *Id.* The VDF is thus what the display feature looks like. A separate table stores "positional identifiers," *i.e.*, where a display feature could go. *Id.* at 15:47-16:2, Fig. 3B.[17]

The point of the invention is that the VDFs and positional identifiers are different, so that the *VDF*, pulled from one table, can then be pointed at a *location* pulled from another:

> [I]n operation, guide system 200 may be prompted to project a particular VDF based on an address identifier 287 onto a surface of a particular object based on a positional identifier 288, with the projected VDF thereby forming a visual indicator on the object. With reference to the embodiment of FIG. 3B, for example, the VDF "Select 3" of address identifier C1 is projected by projector 266a onto parts rack at positional locations associated with the positional identifiers of PA2, PA3 and PA7 to prompt an operator to select three of each of Part 2, Part 6, and Part 7, respectively.

*Id.* at 16:34-47; *see also id.* at 2:28-35 (The "guide system includ[es] a plurality of programmed addressed display features ***and*** a plurality of programmed positional identifiers. The guide system …

---

[17] LightGuide misquotes the '614 Pat. at 17:43-46. *See* Dkt. 134 at 20. That citation supports Amazon, because it discusses the controller having separate "address table 286 and positional listing 289."

causes the directional light device to project a visual indicator corresponding to an addressed display feature onto a physical object at a location corresponding to a positional identifier …."). This is what the patent touts, at 17:20-28, as allowing the claimed "dynamic" functioning:

> Accordingly, guide system 200 may be dynamically used to project selected VDFs onto particular locations of an object by selecting a VDF via its associated VDF address identifier 287 and directing a projector 266 to project the selected VDF by a positional identifier 288.

The claims follow this structure. Claim 1 is directed to the "selectable addressed display features," with their "unique … address identifier[s]," and Claim 2 adds that the system "further includes … positional identifiers," and recites "projecting *visual indicators corresponding to said selected addressed display features* … at a *location corresponding to said selected positional identifiers*." And independent Claim 17 requires both "addressed display features" and "positional identifiers." They are thus necessarily different things, as properly reflected in Amazon's construction.

### M.    "address identifier" ['614 Patent, Claims 1, 17]

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | "an identifier that provides the location of a data element" |

Once more, LightGuide contends that a coined term has a "plain meaning" to a POSITA, but does not say what it is. Dkt. 134 at 21. To the extent a term has a "plain meaning" to a POSITA, that meaning needs to be conveyed to the jury via claim construction. *See, e.g.*, *O2 Micro v. Beyond Innovation*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). Amazon's construction is consistent with the specification. The "address identifiers" described in the specification—such as "A1", "C1," etc., are identifiers that provide the location of a data element. *See* '614 Pat. at 15:24-46, Fig. 3a.

### N.    "with a combination of the sequence of input signals resulting in a creation of a dynamic, real time projection of visual indicators" ['614 Patent, Claims 1, 17]

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | *A projection of visual indicators must be created dynamically and in real time in response to a sequence of input signals.* |

This claim term was the last one added to the independent claims of the '614 Patent, and the

one that gained issuance of the '614 Patent over the prior art. *See* Ex. D at 225-31, 234-38, 262-65. As such, it must be given a meaning different from the remainder of the claim. *See, e.g.*, *Bd. Of Regents of the Univ. of Texas Sys. v. BENQ Am.*, 533 F.3d 1362, 1370 (Fed. Cir. 2008).

This limitation appears as part of language with 3 additional sub-limitations, numbered below:

> wherein said guide system controller is **[1]** operative to receive any sequence of said visual indicators from the separate computer system or controller to **[2]** dynamically control projection of any sequence of said visual indicators corresponding to respective said addressed display features **[3]** based on said input signals corresponding to desired visual indicators for the particular operation **[4]** *with a combination of the sequence of input signals resulting in a creation of a dynamic, real time projection of visual indicators*.

'614 Pat., Cls. 1/17. The first three limitations above specify that the claimed system must (1) use input signals to control what is projected; (2) be capable of receiving any order of input signals; (3) the guide system controller must dynamically control projection of any sequence of visual indicators; (4) the input signals used to control the projection must correspond to an addressed display feature. What remains, the claim language, requires something additional: that the projection be *created* dynamically and in real time in response to input signals.[18]

This construction is supported by the specification, which contains two passages that discuss dynamic projections. *See* '614 Pat. at 17:20-28, 17:60-18:10. The first describes creating a projection in real time using a VDF and a positional identifier, as discussed above in Section IV.L. The second discusses a system that uses information like "the model and location of a vehicle" to identify necessary assembly actions, which are converted in real time into a projection of visual indicators.

This construction is further supported by the prosecution history, because this limitation was added specifically to distinguish the claims from a reference called Wechter. While Wechter disclosed the ability to display different pre-set sequences of instructions, it did not disclose the dynamic

---

[18] LightGuide interprets this phrase as requiring "the guide system controller to be operative to project any desired visual indicator(s) by selecting one or more particular addressed display feature based on the input signal(s) received." Dkt. 134 at 22. This meaning appears no different than the first dynamic limitation, and so must not be correct.

*creation* of instructions, as the claim limitation at issue requires. *See* Ex. D at 225, 264, Ex. N.

O.    **"A guide system adapted to provide visual indicators to an individual to guide actions of the individual for a particular guided operation" ['036 Patent, Cl. 7]**

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Limiting as to "guide system" | Limiting in its entirety |
| Plain and ordinary meaning | "A guide system adapted to provide visual indicators to an individual to direct the individual to perform specific actions for a particular guided operation" |

For the reasons set forth in Sections III.B and IV.J above, Amazon's construction, which makes clear that the claimed invention directs an individual to perform specific actions, is correct.[19]

The preamble is also limiting, for reasons set forth in Sections IV.A and I above as to the preambles of the '981 and '614 Patents. In addition, the preamble of the '036 Patent is limiting because it provides antecedent basis for "the particular guided operation" in the body of Claim 7, and context for "visual indicator" in the body of Claim 7. *See Bell Comms.*, 55 F.3d at 620.

P.    **"a camera located proximate to said directional light device" ['036 Patent, Cl. 7]**

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | *Indefinite* |

"[A] camera located proximate to said directional light device" is indefinite because there is no "objective boundar[y]" for determining its scope. *Interval*, 766 F.3d at 1371. For a term such as "proximate," which describes distance, there must be some objective *lower* boundary and objective *upper* boundary. *Haliburton Energy Srvs. v. M-I*, 514 F.3d 1244, 1253 n.5 (Fed. Cir. 2008). Notably, the only expert to have opined on this term—Amazon's expert Dr. Singhose—has found it indefinite. Singhose Decl. ¶¶ 34-51. Despite LightGuide having identified multiple technical experts in this case, none of them provided a responsive declaration.

"Proximate" appears only in Claims 1 and 7; the specification does not use it. And the '036 Patent uses only very general language to describe the position of the camera relative to the directional

---

[19] To the extent citations above are to the '614 Patent, the same citations apply for the '036 Patent.

light device. For example, the '036 Patent states that "[c]amera 313 may be a separately mounted camera, such as at a fixed position or mounted for movement, such as by servo motors." '036 Pat. at 21:11-13. While this passage indicates that the camera location may be fixed or mounted for movement, it does not provide any indication as to when the camera would be "proximate" to the light. The patent also states that "camera 313 may be integrated with the directional light projecting devices." *Id.* at 21:13-14. But this passage does not inform when the camera and light would be considered "proximate." Notably, a remote monitor is also considered "integrated with guide system 300." *Id.* at 20:47-50. The remaining camera-related passages discuss the camera functionality. For example, the patent states that "[a] camera operable to image ... [the] actions of an individual guided by the visual indicator or a visual indicator itself may be included in the guide system where a controller, such as the guide system controller, records images and time durations while an operator is guided." *Id.* at 2:19-24. This passage, and others like it, describes a camera that is part of the claimed guide system, but it does not explain what it means for the camera to be proximate to the light device.

"When the intrinsic evidence is silent as to the plain meaning …, it is entirely appropriate for the district court to look to dictionaries or other extrinsic sources for context—to aid in arriving at the plain meaning …." *Helmsderfer v. Bobrick Washroom Equip.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008). According to those sources, "proximate" means to be "nearest" or "very close" in space or time. *See* Ex. O ("proximate": "closest in space or time"); Ex. P ("proximate": "Very near or next, as in space, time, or order."; Ex. H ("proximate": "**1 NEAREST** nearest in order, time, or place **2 VERY CLOSE** very close in space or time"). The term "proximate" is thus a "term of degree"—that is, a term that "necessarily calls for a comparison against some baseline," *Liberty Ammunition v. U.S.*, 835 F.3d 1388, 1395 (Fed. Cir. 2016), because it calls for a comparison of the distance (i.e., near, closest) between two objects or events, as compared to other objects or events. *See, e.g., TransData v. Centerpoint Energy Houston Elec.*, 2016 WL 3172791, *3 (E.D. Tex. 2016) ("The claims … recite

the term "proximate" as a term of degree to express the closeness of components …."). Courts "especially take caution when presented with terms of degree," and the Federal Circuit has "recognized that claims having terms of degree will fail for indefiniteness unless they 'provide objective boundaries for those of skill in the art'" when read in light of the intrinsic evidence. *Id.* (quoting *Interval*, 766 F.3d at 1370-71). Here, however, there is no such objective boundary.[20]

LightGuide argues that courts "routinely" find terms like "proximate" to be definite. That is only true where—unlike here—the patents are "reasonably precise," offering adequate context for the term. *Ironburg Inventions v. Valve*, 64 F.4th 1274, 1288 (Fed. Cir. 2023). But when the patents are not so precise, courts find terms like "proximate" to be indefinite. *See, e.g.*, *NuVasive v. Alphatec Holdings*, 557 F. Supp. 3d 1069, 1078 (S.D. Cal. 2021) ("[P]roximate to the medial plane" is a subjective limitation that fails to inform [POSITAs] about the scope of the invention …."); *Geoscope Techs. v. Google*, 2023 WL 4627433, at *11 (E.D. Va. July 19, 2023) ("in proximity" indefinite); *Abdou v. Alphatec Spine*, 2014 WL 6611422, at *7 (S.D. Ca. Nov. 19, 2014) (same).

LightGuide also argues that the term "proximate" is used to indicate that "the camera is with the directional light device, whereas the monitor is remote …." Dkt. 134 at 26. This is an attempt to redefine "proximate" to mean "with"—an even more subjective term. Even under this redefinition, the claims would be indefinite as lacking "sufficient guidance." *Interval*, 766 F.3d at 1371.

LightGuide also argues that the camera is "proximate" to the light device as long as the camera is "configured to capture an image of at least the individual, the physical object, and said visual indicator when … projected onto the physical object." Dkt. 134 at 27. This argument reads the term

---

[20] The only way to give definite meaning to this term—if at all possible—would be to construe "proximate to" as "touching" or "within the same device," consistent with the "very near or next" definition. Ex. P. This would be consistent with the "integrated camera device 313" depicted in Fig. 4. '036 Pat. at 20:23-27, Fig. 4. Construing the term otherwise—such as "very near"—would not resolve the indefiniteness problem, because that is yet another term of degree without context. *See in re Neurografix ('360) Pat. Litig.*, 201 F. Supp. 3d 206, 223 (D. Mass. 2016) (finding claim term "near said excitation and output arrangement means" indefinite because "'near' signifies physical proximity and is a term of degree that is susceptible to subjective interpretation" and "nothing in the … patent sheds light on the limits of proximity required by the 'near' term").

"proximate" out of the claims. Moreover, the ability to capture the claimed scene does not depend on whether the camera is proximate to the light device: even a very distant camera can capture that, albeit with steadily diminishing quality. Singhose Decl. ¶ 50; *see also id.* ¶¶ 47-50. But as Dr. Singhose confirmed, "[t]here is no objective boundary as to where the projection-capturing function of the camera ceases to be effective," *id.* ¶ 47, so this construction, too, would render the term indefinite.

Finally, LightGuide argues that there is no ambiguity regarding which two points need to be measured. Dkt. 134 at 28-29. This argument dodges the question. The '036 Patent must provide a POSITA with an objective boundary to determine whether the camera and light device are proximate. The ability to measure the distance between them does not provide the ability to determine whether they are "proximate." Because the patent does not provide that ability, the claim term is indefinite.

### Q.  "project and target at least one indicating light" ['036 Patent, Cl. 7]

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | "project and aim at least one light that directs an individual to take a specific action" |

Amazon incorporates by reference herein Sections III.B and IV.E, above.

### R.  "to project a visual indicator with said indicating light onto a physical object associated with the particular guided operation" ['036 Patent, Claim 7]

| LightGuide's Construction | Amazon's Construction |
|---|---|
| Plain and ordinary meaning | "<u>to project</u>[21] a visual indicator with said indicating light onto a physical object associated with the particular guided operation to <u>direct an individual to perform a specific action</u>" |

Amazon incorporates by reference herein Section III.B, above.

## V.  **CONCLUSION**

For the foregoing reasons, Amazon respectfully requests that the Court hold "operation information," "operational information," and "proximate to" indefinite, and adopt the remainder of Amazon's proposed constructions.

---

[21] Amazon revised its construction as underlined in response to LightGuide's argument.

Date: December 7, 2023

**HUESTON HENNIGAN LLP**

By:

Moez M. Kaba
Christina V. Rayburn
Christine M. Woodin
Thomas B. King
HUESTON HENNIGAN LLP
523 W. 6th St., Suite 400
Los Angeles, CA 90014
mkaba@hueston.com
crayburn@hueston.com
cwoodin@hueston.com
tking@hueston.com

AND

Deron R. Dacus
THE DACUS FIRM, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701
ddacus@dacusfirm.com

*Attorneys for Defendants*
*Amazon.com, Inc. and Amazon.com*
*Services LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record via the Court's ECF system on December 7, 2023.

Christina V. Rayburn